1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7   JEFF RAGAN, et al.,                    Case No. 16-cv-05580-RS

            Plaintiffs,

8

        v.                                 **ORDER GRANTING MOTION TO
9                                          DISMISS**

10  COUNTY OF HUMBOLDT
    DEPARTMENT OF HEALTH AND
    HUMAN SERVICES, et al.,
11
            Defendants.

12

13

14                             **I. INTRODUCTION**

15          This action arises out of the removal of a minor child, J.H., from the custody of her former

16  legal guardians and prospective adoptive parents, Plaintiffs Jeff and Janine Ragan.  The state court

17  conducted a juvenile dependency proceeding and decided J.H. should be removed from her

18  guardians' custody and placed in the care of Humbolt County.  Plaintiffs appealed that decision to

19  the California Court of Appeal but failed to file an opening brief, so the appeal was dismissed.

20  Plaintiffs then filed this action asserting various constitutional violations and state law torts arising

21  out of the agency adoption process, the removal of J.H. from their custody, and the state court

22  dependency proceedings.  Defendants move to dismiss or, alternatively, for summary judgment.

23  For the reasons discussed below, Plaintiffs' constitutional claims are barred, at least in part, by the

24  *Rooker-Feldman* doctrine and otherwise fail to state a claim for relief.  The complaint is thus

25  dismissed with only limited leave to amend.

26                              **II. BACKGROUND**

27

28

United States District Court
Northern District of California

A. <u>Factual Background</u>[1]

Plaintiffs are prospective adoptive parents to two minor children, J.H., a 16 year old girl, and J.P., a 14 year old boy. The children are siblings. In 2004, Humbolt County, through the Department of Health and Human Services, placed the children into Plaintiffs' custody. In 2005, Plaintiffs were granted permanent legal guardianship of the children. In 2009, Plaintiffs contacted the California Department of Social Services regarding formal adoption. That year, Humbolt determined that the children were eligible for the Adoption Assistance Program ("AAP"), which would provide funding to assist with their care and well-being. From 2009 through 2011, Plaintiffs worked with Keri Schrock, a Humbolt employee, to satisfy the requirements for an agency adoption. In 2010, Plaintiffs completed their home study for adoption.

In July 2011, Schrock began communicating legal positions "that mischaracterized the adoption process options or otherwise misrepresented the legal avenues for adoption available to Plaintiffs." Comp. ¶ 31. For example, she told Plaintiffs they could proceed with an agency adoption only if the minor children were made dependents of the County, which would require Humbolt to offer reunification services with the children's biological mother, Maureen Henderson. (The biological father, Stephen Parr, formally relinquished his parental rights to the County in April 2011.) Schrock also told Plaintiffs that they could not legally continue with the agency adoption without Henderson's termination of parental rights, so they had either to apply for independent adoption, and lose any opportunity of AAP funding, or negotiate an agreement with Henderson. Plaintiffs alerted Schrock to their understanding that permanent legal guardians can seek termination of parental rights where adoption is in the best interests of the minor child. She never responded.

In 2013, J.H. began struggling with emotional issues, and the family began therapy. On January 15, 2015, J.H. ran away from home. She was found that day and taken to a local mental

---

[1] The factual background is based on the averments in the complaint, which must be accepted as true at this stage, as well as state court records properly subject to judicial notice.

ORDER RE MOTION TO DISMISS
CASE NO. 16-cv-05580-RS

2

1   health crisis center in Santa Rosa.  There, she was tentatively diagnosed with depression and

2   various personality disorders and referred to residential treatment.  Plaintiffs contacted California

3   Department of Social Services to inquire if AAP funding could be used to help cover the cost of

4   residential treatment.  On January 26, 2016, Adoptions Specialist Carolyn Perkins, an employee of

5   that department, sent Plaintiffs a letter stating that an agency adoption was appropriate in order to

6   access AAP funding for J.H.'s medical needs.

7         In February 2015, Plaintiffs contacted Schrock to discuss options for funding J.H.'s

8   residential treatment program.  Schrock recommended they relinquish guardianship of J.H. and

9   then seek for J.H. to be placed in their home as a non-relative extended family member.  On

10  March 30, 2015, J.H. was released from psychiatric care as the available insurance would not

11  cover any further treatment.  In May 2015, Schrock performed a bi-annual guardianship home visit

12  and no problems were noted.  In July 2015, a juvenile dependency court ordered that Henderson's

13  rights be terminated.  Plaintiffs transmitted this order to Schrock and requested adoption through

14  the County.  They also requested an immediate update to the previous home study because the

15  home study from 2010 was only valid for five years and would expire in September 2015.  In

16  August 2015, Plaintiffs filed for agency adoption.  Schrock took no immediate action.  In October

17  2015, the County notified Plaintiffs that they were ineligible for agency adoption, but advised they

18  could proceed with an independent adoption, which would eliminate the possibility of AAP

19  funding.

20        In November 2015, the juvenile dependency court ordered the County to grant an agency

21  adoption, complete an abbreviated home study no later than December 22, 2015, and grant AAP

22  funding to Plaintiffs.  In December 2015, the County reported that they lost the original home

23  study and Plaintiffs' entire file.  Humbolt also represented to the juvenile dependency court that it

24  tried to speak with the minor children at Plaintiffs' residence but Plaintiffs denied them access.

25        On January 4, 2016, Mr. Ragan underwent hip surgery.  On January 7, 2016, J.H.

26  threatened suicide and was placed in an adolescent hospital in San Francisco.  She was released

27  from the hospital on January 10, 2016.  The County contacted Plaintiffs and informed them that if

28

United States District Court
Northern District of California

ORDER RE MOTION TO DISMISS
CASE NO. 16-cv-05580-RS

3

1    they did not pick up J.H. from the adolescent hospital immediately, they would be charged with

2    neglect.  Plaintiffs did not pick up J.H. because of Mr. Ragan's recent hip surgery and because

3    they could not care for her in a mental health crisis.  J.H. spoke with Ann Seaquist, a social

4    worker, who told her that Plaintiffs were being investigated for neglect.  On January 15, 2016, J.H.

5    was taken into custody and placed in foster care.  Plaintiffs were charged with severe emotional

6    abuse, neglect, and abandonment.  On or about February 24, 2016, the County dropped those

7    charges, and agreed to perform an abbreviated home study for Plaintiffs to proceed with the

8    agency adoption.

9              B. Juvenile Dependency Proceedings

10             In California, dependency proceedings in the juvenile court are special proceedings

11   governed by their own set of rules as set forth in the Welfare and Institutions Code ("WIC").  *See*

12   *Belinda K. v. Baldovinos*, No. 10–CV–02507–LHK, 2012 WL 464003, at *1–2 (N.D. Cal. Feb. 13,

13   2012).  Section 300 of the WIC describes situations that will bring a child within the jurisdiction

14   of the juvenile court for dependency proceedings.  A dependency proceeding may be initiated

15   when the Department of Child and Family Services files a petition attesting that the child falls

16   within the scope of WIC § 300.  Upon the filing of a petition, the juvenile court holds a detention

17   hearing to determine whether the child requires emergency removal from the home, followed

18   shortly thereafter by a jurisdictional hearing to determine whether the allegations in the petition

19   are true, in which case the child is declared a dependent of the juvenile court.  If the court finds

20   that it has jurisdiction over the child under WIC § 300, it then conducts a disposition hearing to

21   determine whether the child may remain in the home under court supervision, or whether the child

22   must be removed from the home, requiring "family reunification services" for twelve months after

23   the child enters foster care.  *See id.* (citing WIC §§ 358, 361.5(a)(1)(A), 362).  The juvenile court

24   continues to monitor the family's progress on the case plan by holding status review hearings

25   every six months.  *See id.* (citing WIC § 366(a)(1)).  If by the twelve month review the court does

26   not return the child, and if the court further determines by clear and convincing evidence that

27   reasonable reunification services have been provided or offered to the parents but that there is no

28
                                                        ORDER RE MOTION TO DISMISS
                                                        CASE NO. 16-cv-05580-RS

1    substantial probability of return within 18 months of removal, then WIC § 366.26 requires the

2    court to terminate reunification services and set the matter for a permanency hearing.  *See id.*

3    (citing WIC §§ 366.21, 366.26).  At that hearing, the court selects and implements a permanent

4    plan.  *See id.* (citing WIC § 366.26).

5              Here, Humbolt filed a petition, on behalf of J.H., requesting that she be declared a

6    dependent of the court on January 20, 2016.  The petition alleged that the jurisdiction and

7    dependency were warranted because the Ragans were unable to meet J.H.'s emotional needs and

8    unable or unwilling to have J.H. returned to their care.  The petition was accompanied by a social

9    worker's Detention Report, which noted that Seaquist visited the Ragans' home but was not

10   allowed to speak with J.H. and that J.H. subsequently called Seaquist to say that she did not want

11   to be adopted by the Ragans.  The report found that reasonable efforts had been made to prevent or

12   eliminate the need for removal, and recommended that J.H. be temporarily placed in the custody

13   of the County.  An arraignment hearing was held on January 21, 2016.  The Ragans and Humbolt

14   were represented by counsel and the court appointed counsel for J.H.  The court adopted the

15   interim findings and orders as recommended in the Detention Report, including that J.H. be

16   temporarily placed in residential treatment, that the Ragans be provided parental education and

17   counseling to facilitate reunification efforts, and that the Ragans be permitted to visit J.H. at least

18   twice a week.  A detention hearing was held on January 25, 2016 and the court again adopted the

19   interim findings and orders consistent with its previous interim order.

20             A jurisdiction hearing was held on February 10, 2016.  Plaintiffs argued that the

21   Department's "lack of cooperation and neglectful actions have caused delays and further harm to

22   the minor," and asserted that Child Welfare Services ("CWS") "exacerbated [J.H.'s] conflict with

23   the Ragans, continued to destabilize her mental health and facilitated her distortion of her

24   circumstances."  RJN, Ex. G.  On February 23, 2016, a social worker filed an Amended

25   Jurisdictional Report which stated, per the parties' stipulation, that despite their best efforts, the

26   Ragans could not meet J.H.'s emotional needs.  On February 24, 2016, the court assumed

27   jurisdiction based on the information in the Amended Jurisdictional Report.

28                                                                          ORDER RE MOTION TO DISMISS
                                                                           CASE NO. 16-cv-05580-RS

United States District Court
Northern District of California

United States District Court
Northern District of California

1    A three-day contested dispositional hearing began in late June 2016 and ended in July

2    2016.  In their pretrial statement, the Ragans argued that their expert's evaluation confirmed that

3    the guardians were not neglectful or abusive and that the involvement of CWS exacerbated J.H.'s

4    conflict with the Ragans, continued to destabilize her mental health, and facilitated her distortion

5    of circumstances.  At the hearings, the Ragans called multiple witnesses.  On July 18, 2016, after

6    hearing all of the evidence and argument, the court adopted the findings and orders of the social

7    worker's report with minor modifications.  The court declared J.H. a dependent of the state and

8    ordered the Department to provide family reunification services to the Ragans.  It ordered a six-

9    month review hearing on January 17, 2017.  Shortly thereafter, the Ragans appealed the court's

10   declaration of dependency and removal of J.H. from their custody.  In November 2016, the

11   California Court of Appeal dismissed the appeal for failure to file an opening brief.

12      On September 30, 2016, Plaintiffs filed suit in federal court against Humbolt County,

13   Connie Beck, Keri Schrock, Ann Seaquist, and Dolores Hickenbottom.  Plaintiffs bring claims

14   under 42 U.S.C. § 1983 for (1) interference with familial relations, (2) retaliation, (3) unlawful

15   seizure, (4) violations of procedural and substantive due process, and (5) *Monell* liability, as well

16   as various state law claims.

### III. LEGAL STANDARD

18      A complaint must contain "a short and plain statement of the claim showing that the

19   pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While "detailed factual allegations" are not

20   required, a complaint must have sufficient factual allegations to "state a claim to relief that is

21   plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. v. Twombly*,

22   550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the pleaded factual content allows

23   the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

24   *Id*.  This standard asks for "more than a sheer possibility that a defendant acted unlawfully."  *Id*.

25   The determination is a context-specific task requiring the court "to draw on its judicial experience

26   and common sense."  *Id*. at 679.

27      A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil

28

1    Procedure tests the legal sufficiency of the claims alleged in the complaint.  *See Parks Sch. of*

2    *Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  Dismissal under Rule 12(b)(6) may

3    be based either on the "lack of a cognizable legal theory" or on "the absence of sufficient facts

4    alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699

5    (9th Cir. 1990).  When evaluating such a motion, the court must accept all material allegations in

6    the complaint as true, even if doubtful, and construe them in the light most favorable to the non-

7    moving party.  *Twombly*, 550 U.S. at 570.  "[C]onclusory allegations of law and unwarranted

8    inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v.*

9    *Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Iqbal*, 556 U.S. at 678

10   ("threadbare recitals of the elements of the claim for relief, supported by mere conclusory

11   statements," are not taken as true).

### IV. DISCUSSION

13   In their motion to dismiss, Defendants argue that Plaintiffs claims are barred by issue

14   preclusion, the family law exception to jurisdiction, and the *Younger* abstention doctrine.  While

15   Defendants correctly intuit that this action is ill-suited for federal court, the more relevant

16   abstention doctrine appears to be *Rooker-Feldman*, given that Plaintiffs filed this lawsuit after the

17   state court rendered its judgment and complain of injuries stemming from that judgment.[2]  The

18   claims that are not barred by *Rooker-Feldman* fail for other reasons.

19   A. *Rooker Feldman*

20   The *Rooker–Feldman* doctrine precludes federal courts from hearing "cases brought by

21   state-court losers complaining of injuries caused by state-court judgments rendered before the

22   district court proceedings commenced and inviting district court review and rejection of those

23   judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  It

24   prohibits direct appeals from the final judgment of a state court and "may also apply where the

---

26   [2] While Defendants do not raise the applicability of *Rooker-Feldman*, courts may invoke the
     doctrine *sua sponte* because it relates to subject matter jurisdiction. *See Worldwide Church of*
27   *God v. McNair*, 805 F.2d 888, 890 (9th Cir. 1986).

28                                                                ORDER RE MOTION TO DISMISS
                                                                  CASE NO. 16-cv-05580-RS

*Left margin:* United States District Court Northern District of California

1    parties do not directly contest the merits of a state court decision, as the doctrine prohibits a

2    federal district court from exercising subject matter jurisdiction over a suit that is a *de facto* appeal

3    from a state court judgment." *Reusser v. Wachovia Bank, N.A.,* 525 F.3d 855, 859 (9th Cir. 2008).

4    In short, "[i]f a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state

5    court, and seeks relief from a state court judgment based on that decision, *Rooker–Feldman* bars

6    subject matter jurisdiction in federal district court.  If, on the other hand, a federal plaintiff asserts

7    as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker–Feldman* does

8    not bar jurisdiction." *Noel v. Hall,* 341 F.3d 1148, 1164 (9th Cir. 2003).

9           "[A] federal district court dealing with a suit that is, in part, a forbidden *de facto* appeal

10   from a judicial decision of a state court must refuse to hear the forbidden appeal.  As part of that

11   refusal, it must also refuse to decide any issue raised in the suit that is 'inextricably intertwined'

12   with an issue resolved by the state court in its judicial decision." *Doe v. Mann,* 415 F.3d 1038,

13   1043 (9th Cir. 2005).  The *Rooker–Feldman* doctrine applies not only to final state court orders

14   and judgments, but to interlocutory orders and non-final judgments issued by a state court as well.

15   *Doe & Assoc. Law Offices v. Napolitano,* 252 F.3d 1026, 1030 (9th Cir. 2001).

16          Here, Plaintiffs' suit is barred, in part, by the *Rooker-Feldman* doctrine.  Plaintiffs claim

17   their due process rights were violated because they were "never given a fair opportunity to retain

18   and maintain custody of J.H." and prevented from "receiving a fundamentally fair, orderly, and

19   just judicial proceeding."  Comp. ¶ 97, 101.  Plaintiffs also claim a Fourth Amendment violation

20   for the "wrongful taking of a minor" because Defendants "caused [J.H.] to be removed from

21   [their] legal custody."  *Id*. ¶ 105.  These claims invite review of the juvenile dependency

22   proceeding.

23          Plaintiffs' also allege that Defendants presented fabricated evidence to the court and

24   refused to provide exculpatory evidence throughout the dependency proceedings. Comp. ¶¶ 78,

25   99.  These allegations raise issues that are "inextricably intertwined" with the juvenile dependency

26   proceeding.  *See, e.g., Ismail v. County of Orange*, 2012 WL 3644170 (C.D. Cal. June 11, 2012).

27   While there is an exception to the *Rooker–Feldman* doctrine for allegations of extrinsic fraud,

United States District Court
Northern District of California

28                                                                          ORDER RE MOTION TO DISMISS
                                                                            CASE NO. 16-cv-05580-RS

1    Plaintiffs do not appear to allege extrinsic fraud here.  Extrinsic fraud is "conduct which prevents a

2    party from presenting his claim in court." *Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981);

3    *see also Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (allegations of extrinsic fraud require "the

4    investigation of a new case arising upon new facts").  Plaintiffs raise the same factual disputes

5    previously raised in the dependency proceeding.  *See, e.g.*, RJN. Exs. G, S and L.  They do not

6    allege that Defendants committed any fraud that they were prevented from challenging in the

7    proceedings.  *Contra Kougasian*, 359 F.3d at 1138.  Thus, Plaintiffs' allegations do not fit within

8    the extrinsic fraud exception.

9         It is immaterial that the Ragans bring "an indirect challenge based on constitutional

10   principles." *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003); *see also Sample v.*

11   *Monterey Cnty. Family & Children Servs.*, 2009 WL 2485748 at *3 (N.D. Cal. 2009) ("Although

12   [plaintiff] asks for monetary damages, she would only receive a damage award if this court

13   determined that the Dependency Court's decisions pertaining to the custody of her children—

14   including any review or authorization of defendants' actions—were in error. Accordingly, to

15   evaluate her claims and grant her the relief she requests, this court would have no choice but to

16   review and reject the state Dependency Court's decision, including its acceptance of Monterey

17   County's removal actions."); *Grimes v. Alameda County Social Servs.*, 2011 WL 4948879, at *3

18   (N.D. Cal. Oct. 18, 2011) ("Even if plaintiff were to abandon his request for the return of his

19   children and instead pursue only money damages, his claims still would require review of the

20   relevant state-court decisions.  Such review is barred.  Even though plaintiff nominally asserts

21   claims for alleged civil rights violations, his pleading is de facto an improper collateral attack on

22   unfavorable state-court rulings.").  To the extent Plaintiffs' first, third, and fourth causes of action

23   are based on errors in the juvenile dependency proceeding, they are barred and dismissed without

24   leave to amend.[3]

---

[3] The determination that subject matter jurisdiction is inappropriate is only bolstered by the fact
that the state judgment at issue involves a custody matter.  "The whole subject of the domestic
relations of husband and wife, parent and child, belongs to the laws of the States and not to the
laws of the United States." *Ex parte Burrus*, 136 U.S. 586, 593–94 (1890).

United States District Court
Northern District of California

1    Not all of Plaintiffs' constitutional claims, however, are barred by the *Rooker-Feldman*

2    doctrine. *See Noel,* 341 F.3d at 1156 ("[W]here the federal plaintiff does not complain of a legal

3    injury caused by a state court judgment, but rather of a legal injury caused by an adverse party,

4    *Rooker—Feldman* does not bar jurisdiction.")  For example, Plaintiffs allege that Defendants'

5    violated their First Amendment rights by retaliating against them.  While they allege this

6    retaliation occurred "through the juvenile dependency court" and rely on some of the same facts

7    discussed above, *see, e.g.*, Comp. ¶¶ 105-106, they appear to limit their claim to events preceding

8    the juvenile dependency proceedings, primarily Defendants' conduct during the agency adoption

9    process. *See id*. ¶ 93(a)-(h).  Their *Monell* claim is similarly pleaded. *See id*. ¶ 113(a)-(e).[4]

10    Moreover, some of their federal claims are only barred in part.  Read with the requisite

11    liberality, Plaintiffs' Fourth Amendment and familial interference claims appear vaguely based, in

12    part, on allegations regarding J.H.'s initial seizure, *see, e.g.*, *id*. ¶¶ 78, 104, which are also not

13    inextricably intertwined with the juvenile dependency proceedings. *See, e.g., Ybarra-Johnson v.*

14    *Arizona,* 2014 WL 583358 (D. Arizona Nov. 12, 2014) ("[W]hile this Court is precluded from

15    assessing whether Plaintiff's parental rights should have been terminated, *Rooker-Feldman* does

16    not bar Plaintiffs' claims concerning whether the initial seizure of the children and subsequent

17    CPS investigation was conducted in a reasonable and unbiased fashion.").  To the extent

18    Plaintiffs' claims are based on the Defendants' unlawful conduct, separate and apart from any

19    legal errors committed in the juvenile dependency proceedings, they are not barred by *Rooker-*

20    *Feldman* and are thus discussed below. *See Noel*, 341 F.3d at 1164.

21        B. Remaining Federal Claims

22            1. Familial Association

23

---

24    [4] Although Plaintiffs' due process claim includes some stray allegations regarding delays in the
adoption process, the injury alleged is that, "[a]s a result of [] Defendants' actions, Plaintiffs

25    [were] never given a fair opportunity to retain and maintain custody of J.H." Comp. ¶ 101.
Accordingly, it is difficult to see how their due process claim is anything but "inextricably

26    intertwined" with the state juvenile proceedings.  That claim is thus dismissed in its entirety

27    without leave to amend.

28                                              ORDER RE MOTION TO DISMISS
                                                CASE NO. 16-cv-05580-RS

1       Plaintiffs allege that Defendants violated their right to familial association in part by

2   unlawfully seizing J.H. without proper justification or authority and without probable cause,

3   exigency, or court order.  They bring this cause of action against all individual defendants.

4   Defendants argue that they are protected by the doctrine of qualified immunity because

5   prospective adoptive parents do not have a clearly established constitutional right to familial

6   association.

7       Government officials who perform discretionary functions are generally immune to

8   liability for civil damages "insofar as their conduct does not violate clearly established statutory or

9   constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457

10  U.S. 800, 818 (1982).  In deciding whether to grant qualified immunity, a court must determine (a)

11  whether the alleged facts make out a constitutional violation, and (b) whether the constitutional

12  right at issue was clearly established at the time of the violation.  *Saucier v. Katz*, 533 U.S. 194,

13  201 (2001).

14      Plaintiffs have failed to show that their constitutional rights to familial association were

15  "clearly established."  Indeed, the Ninth Circuit recently held in an unpublished opinion that, even

16  if it could be established that foster parents were deprived of their custody of their foster child

17  without notice or an opportunity to object, they could not demonstrate that their custody of their

18  foster child was a liberty interest protected by the due process clause.  *See Huk v. County of Santa*

19  *Barbara*, 650 Fed. Appx. 365, 367 (9th Cir. May 17, 2016).  It reasoned that, under California

20  law, a social worker's removal authority is highly discretionary and not governed by objective and

21  defined criteria, so foster parents are not entitled to the notice and grievance procedures, as a

22  matter of federal constitutional right.  The Ninth Circuit noted that nothing in the record would

23  support a conclusion that appellants could be designated as "prospective adoptive parents" for

24  constitutional purposes.  In so finding, it distinguished *Elwell v. Byers*, 699 F.3d 1208, 1217 (10th

25  Cir. 2012), which found a protected liberty interest where foster parents had cared for a child for

26  "nearly his entire life and were on the verge of adopting him."  Even if the facts here are more like

27  *Elwell* than *Huk*, the factual record would then raise an issue of first impression regarding the

28                                                                      ORDER RE MOTION TO DISMISS
                                                                        CASE NO. 16-cv-05580-RS

United States District Court
Northern District of California

1    constitutional rights of "prospective adoptive parents."  At minimum, the Ragans' constitutional

2    rights to familial association are not "clearly established."  Thus, Plaintiffs' claim based on the

3    right to familial association is dismissed without leave to amend.

4                        2. Retaliation

5            In support of their First Amendment retaliation claim, Plaintiffs allege that they made

6    "repeated requests" for an agency adoption with access to AAP funding and that Defendants

7    retaliated against them as a result of those requests, including by providing inaccurate information

8    about agency adoption, threatening reunification with J.H.'s biological mother, claiming to have

9    lost Plaintiffs' case file, telling J.H. that Plaintiffs were being investigated for abuse, and opening

10   an investigation into abuse.  They bring this cause of action against all individual defendants.  To

11   state a claim for retaliation for the exercise of constitutionally protected rights, a plaintiff must

12   allege: (1) that protected conduct was a "substantial" or "motivating" factor in the defendant's

13   decision; and (2) injury stemming from the allegedly retaliatory action.  *See Resnick v. Hayes,* 213

14   F.3d 443, 449 (9th Cir. 2000).  Here, Plaintiffs' allegations fall short.

15           As an initial matter, many of the allegations in the complaint refer generally to conduct by

16   "Defendants" or "the County."  Plaintiffs do not explain in sufficient detail which individual

17   defendants violated Plaintiffs' First Amendment rights and how those rights were violated by any

18   individual defendant.  Plaintiffs allege they made their repeated requests to proceed with agency

19   adoption to Schrock, but claim it was "the County" that told Plaintiffs they were ineligible for

20   adoption, "the County" that claimed Plaintiffs' case file was lost, "the County" that claimed

21   Plaintiffs denied access to J.H. during a visit, Seaquist who told J.H. that Plaintiffs were being

22   investigated for abuse, and "the County" who informed Plaintiffs that they would be charged with

23   neglect.  Comp. ¶¶ 53, 58, 59, 62, 63.  The complaint includes no specific allegations related to

24   conduct by Hickenbottom or Beck.  Moreover, Plaintiffs do not allege any facts to support their

25   conclusion that their protected conduct was a "substantial" or "motivating" factor in any

26   defendants' conduct.  *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287

27

28                                                                          ORDER RE MOTION TO DISMISS
                                                                            CASE NO. 16-cv-05580-RS

United States District Court
Northern District of California

12

1    (1977).  Thus, Plaintiffs' claim for retaliation is dismissed with leave to amend.  Once the factual

2    and legal basis of this claim has been clarified, the extent of issue preclusion can be evaluated.

3                    3. Fourth Amendment

4    Plaintiffs allege that J.H. was unlawfully seized without a court order and without probable

5    cause in violation of their Fourth Amendment rights.  Defendants argue that Plaintiffs lack

6    standing to bring a Fourth Amendment unlawful search and seizure claim on behalf of J.H.  A

7    person does not generally have standing vicariously to assert the Fourth Amendment rights of

8    another person.  *See Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th

9    Cir.1998) ("[T]he general rule is that only the person whose Fourth Amendment rights were

10   violated can sue to vindicate those rights."); *see also Osborne v. Cnty. of Riverside*, 385 F.Supp.2d

11   1048, 1052–53 (C.D. Cal. 2005).  Claims of unlawful seizure advanced by parents "should

12   properly be assessed under the Fourteenth Amendment standard for interference with the right to

13   family association."  *Wallis v. Spencer*, 202 F.3d 1126, 1137 n. 8 (9th Cir. 2000); *see also Belinda

14   K. v. County of Alameda*, 2011 WL 2690356, at *7 (N.D. Cal. July 8, 2011).  J.H.'s seizure does

15   not implicate Plaintiffs' Fourth Amendment rights.  Thus, this claim is dismissed without leave to

16   amend.

17                   4. *Monell* Liability

18   Plaintiffs assert a *Monell* claim against the County.  Because Plaintiffs fail to allege any

19   individual defendant committed a constitutional violation, their separate claim under *Monell* also

20   fails.  *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no

21   constitutional injury at the hands of the individual police officer, the fact that the departmental

22   regulations might have authorized the use of constitutionally excessive force is quite beside the

23   point.").  In any event, Plaintiffs fail to allege a proper *Monell* claim.

24   A municipality may be liable under section 1983 when the enforcement of a municipal

25   policy or custom was the moving force behind the violation of a constitutionally protected right.

26   *Monell v. Dep't of Social Servs. of the City of New York,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56

27   L.Ed.2d 611 (1978).  Generally, "the actions of individual employees can support liability against

28                                                    ORDER RE MOTION TO DISMISS
                                                     CASE NO. 16-cv-05580-RS

United States District Court
Northern District of California

13

1   a municipality under § 1983 only if those employees were acting pursuant to an official municipal

2   policy." *Haines,* 2011 WL 6014459, at \*4 (quoting *Webb v. Sloan,* 330 F.3d 1158, 1164 (9th Cir.

3   2003)).  Even if there is no "official" policy, a plaintiff can allege liability based on employees'

4   actions under two alternative theories: (1) "if an employee commits a constitutional violation

5   pursuant to a long-standing practice or custom"; or (2) if "the person causing the violation has

6   final policymaking authority."  *Id.* (internal citations omitted).  Examples of a "custom" include

7   that of "inaction or omission, such as a failure to train, if the failure to train amounts to deliberate

8   indifference of plaintiff's rights."  *Id.*

9        Plaintiffs have insufficiently alleged a custom, policy, or practice to establish *Monell*

10   liability.[5]  They only plead actions related to their own experience.  Moreover, Plaintiffs'

11   allegations of causation are conclusory and do not make a causal connection between any custom,

12   policy, or practice at issue and any particular violation of a constitutional right.  Thus, Plaintiffs'

13   claim is dismissed with leave to amend.

14        D. State Law Claims

15        The viability of Plaintiffs' claims under state law need not be reached unless and until

16   there is a viable federal claim stated.  *See* 28 U.S.C. § 1367(c)(3) (providing that a district court

17   may decline to exercise supplemental jurisdiction where it "has dismissed all claims over which it

18   has original jurisdiction"); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988) ("[I]n the

19   usual case in which all federal-law claims are eliminated before trial, the balance of factors to be

20   considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and

21   comity-will point toward declining to exercise jurisdiction over the remaining state-law claims.").

22

23   _____

24   [5] To the extent the claim is based on a "failure to train" theory of *Monell* liability, the claim also
fails.  In order to establish that a municipality is liable under *Monell* for failure to train, plaintiffs
must show that a particular training deficiency was so egregious that it "amount[ed] to deliberate

25   indifference to the rights of persons with whom the police come into contact."  *City of Canton v.
Harris*, 489 U.S. 378, 388 (1989).  Here, the complaint contains no allegations concerning the

26   County's alleged failure to train.  Plaintiffs do not allege what training the County employees
received, do not indicate that any County policymaker was aware that the training was deficient,

27   and, in fact, make no mention of training at all.

United States District Court
Northern District of California

28                                        ORDER RE MOTION TO DISMISS
                                      CASE NO. 16-cv-05580-RS

1

## V. CONCLUSION

2        For the aforementioned reasons, Plaintiffs' complaint is dismissed with limited leave to

3    amend.  Any amended complaint shall include only the claims for which dismissal is granted with

4    leave to amend and must be filed within 21 days.  Plaintiffs are cautioned that any claims in their

5    amended complaint that fail to comply with this order will be dismissed.

6

7    **IT IS SO ORDERED**.

8

9    Dated: March 6, 2017

10

    _____

11    RICHARD SEEBORG
    United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

ORDER RE MOTION TO DISMISS
CASE NO. 16-cv-05580-RS

15